**Ruby FLOWERS, Administratrix for the Estate of Melissa J. Malone, Petitioner–Appellant,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent–Appellee.**

No. 94–5136.

United States Court of Appeals, Federal Circuit.

March 6, 1995.

Scott I. Levey, Mondello & Levey, Cleveland, OH, submitted, for petitioner-appellant.

Gabrielle Manganiello, Atty., Dept. of Justice, Washington, DC, argued, for respondent-appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., Helene M. Goldberg and John Lodge Euler, Attys.

Before RICH, CLEVENGER, and BRYSON, Circuit Judges.

CLEVENGER, Circuit Judge.

Ruby Flowers appeals the May 10, 1994 judgment of the United States Court of Federal Claims affirming the Special Master's order, which dismissed her petition for compensation under the National Childhood Vaccine Injury Act of 1986 (Vaccine Act), Pub.L. No. 99–660, tit. III, 100 Stat. 3755 (current version at 42 U.S.C. §§ 300aa–1 to –34 (1988 & Supp. V 1993)). The court held that it lacked jurisdiction to hear Ms. Flowers's claim because when she filed her Vaccine Act petition, she had pending a civil action involving the same vaccine-related injury. *Flowers v. Secretary of Dep't of Health & Human Servs.*, No. 92–239V, slip op. at 7 (Fed.Cl. May 6, 1994). Because 42 U.S.C. § 300aa–11(a)(5)(B) (Supp. V 1993) precludes a person in such circumstances from filing a Vaccine Act petition, the Court of Federal Claims lacked jurisdiction under 42 U.S.C. § 300aa–12(a) (Supp. V 1993). We thus affirm.

I

On January 16, 1990, Melissa J. Malone was born in Akron, Ohio. On April 2, 1990, she received a diphtheria-pertussis-tetanus vaccine. Melissa suffered anaphylactic shock that resulted in encephalopathy and ultimately death on April 30, 1990. Ms. Flowers, Melissa's maternal grandmother and the administratrix of her estate, filed suit in Ohio state court on April 1, 1992 against the physician who administered Melissa's vaccination. The next day, Ms. Flowers filed a petition in the Court of Federal Claims for compensation under the Vaccine Act. Later learning that the Vaccine Act, in her words, "discouraged" co-pending actions, Ms. Flowers voluntarily dismissed her Ohio suit without prejudice on July 31, 1992.

Unaware of Ms. Flowers's state court action or its dismissal, the government on September 25, 1992 recommended the dismissal of her Vaccine Act petition on the basis that Melissa's death was not vaccine-related, but instead a case of Sudden Infant Death Syndrome. Upon learning of the dismissed Ohio suit, however, the government on December 23, 1993 filed a motion to dismiss her Vaccine Act petition for lack of jurisdiction.

The appointed Special Master granted the government's motion, ordering the dismissal of Ms. Flowers's petition with prejudice for lack of jurisdiction. The Special Master held that § 300aa–11(a)(5)(B) precluded Court of Federal Claims jurisdiction of Ms. Flowers's petition, which she filed while a civil action involving the same vaccine-related injury was pending. *Flowers v. Secretary of Dep't of Health & Human Servs.*, No. 92–239V, slip op. at 4 (Fed.Cl.Sp.Mstr. Feb. 7, 1994). The Court of Federal Claims denied Ms. Flowers's motion for review of the Special Master's order and affirmed the dismissal of her Vaccine Act petition. Ms. Flowers timely appealed to this court pursuant to 42 U.S.C. § 300aa–12(f) (Supp. V 1993).

II

■ This court reviews judgments of the Court of Federal Claims to determine whether they are premised on clearly erroneous factual determinations or otherwise incorrect as a matter of law. *Dairyland Power Coop. v. United States,* 16 F.3d 1197, 1201 (Fed.Cir.1994). We review *de novo* matters of statutory interpretation and jurisdictional delineation. *Matos v. Secretary of Dep't of Health & Human Servs.,* 35 F.3d 1549, 1552

**1560**

(Fed.Cir.1994); *Weddel v. Secretary of Dep't of Health & Human Servs.,* 23 F.3d 388, 391 (Fed.Cir.1994).

### III

■ Our statutory interpretation begins with the language of the statute itself, which must ordinarily be regarded as conclusive absent a clearly expressed legislative intent to the contrary. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The current version of the Vaccine Act states in pertinent part that:

(A) A plaintiff who on October 1, 1988, has pending a civil action for damages for a vaccine-related injury or death may, at any time within 2 years after October 1, 1988, or before judgment, whichever occurs first, petition to have such action dismissed without prejudice or costs and file a petition under subsection (b) of this section for such injury or death.

(B) If a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this section for such injury or death.

42 U.S.C. § 300aa–11(a)(5) (Supp. V 1993). When Ms. Flowers filed her Vaccine Act petition on April 2, 1992, she had a civil action pending in Ohio state court for damages for the same vaccine-related death as stated in her petition. Plainly read, § 300aa–11(a)(5)(B) precludes Ms. Flowers from filing a Vaccine Act petition.

### A

■ By contending on appeal that the Vaccine Act does not prohibit the filing of her petition, Ms. Flowers essentially argues that notwithstanding its plain meaning, § 300aa–11(a)(5)(B) is somehow inapplicable to her case. Ms. Flowers asserts that the Court of Federal Claims failed to act in accordance with the law by basing its holding on the plain meaning of the statute to the exclusion of a consideration of its legislative history. We recognize that "[g]oing behind the plain language of a statute in search of a possibly contrary congressional intent is 'a step to be taken cautiously' even under the best of circumstances." *American Tobacco Co. v. Patterson,* 456 U.S. 63, 75, 102 S.Ct. 1534, 1540, 71 L.Ed.2d 748 (1982) (citation omitted). We will, however, yield to this court's previous admonition that statutory interpretation in the context of a complex legislative scheme such as the Vaccine Act requires more than "simply ... taking the words out of context and treating them as self-evident," *see Amendola v. Secretary of Dep't of Health & Human Servs.,* 989 F.2d 1180, 1182 (Fed.Cir.1993), and thus look to the statute's legislative history.

As originally enacted, the Vaccine Act stated in pertinent part that:

(A) A plaintiff who on the effective date of this subtitle has pending a civil action for damages for a vaccine-related injury or death may, at any time within 2 years after the effective date of this title or before judgment, whichever occurs first, elect to withdraw such action without prejudice and file a petition under subsection (b) for such injury or death.

(B) If a plaintiff *who on the effective date of this subtitle had* pending a civil action for damages for a vaccine-related injury or death *does not withdraw the action under subparagraph (A),* such person may not file a petition under subsection (b) for such injury or death.

Pub.L. No. 99–660, tit. III, § 2111(a)(5), 100 Stat. 3755, 3759 (codified at 42 U.S.C. § 300aa–11(a)(5) (1988) (effective Oct. 1, 1988)) (emphasis added). The Vaccine Act thus defined a distinct class of pre-enactment cases. As originally enacted, paragraphs (A) and (B) composed a harmonious framework to provide all who fell within the exclusionary provision of paragraph (B) with an opportunity nonetheless to enter the federal compensation system by satisfying the saving provision of paragraph (A). Such a construction of the relationship between these paragraphs has been set forth by this court previously. *See Amendola,* 989 F.2d at 1183 (construing § 300aa–11(a)(5) by sensibly reading its two paragraphs "in reverse"); *Matos,* 35 F.3d at 1552 (same).

When it amended § 300aa–11(a)(5) in 1989, Congress, *inter alia,* deleted the language

from paragraph (B) underscored above. Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 6601(c)(3)(B), 103 Stat. 2106, 2285. The sole expressed congressional intent for this amendment was to "provide[ ] technical clarification of the ability of a petitioner with a civil court action pending to enter the compensation system." H.R.Rep. No. 247, 101st Cong., 1st Sess. 511 (1989), *reprinted in* 1989 U.S.C.C.A.N. 1906, 2237. In particular, Congress sought to end situations in which Vaccine Act petitioners with civil actions pending on October 1, 1988 allowed their cases to lie dormant during the federal compensation proceedings while perfecting their elections to withdraw. Paragraph (A) was thus amended to make an affirmative petition for dismissal of a co-pending civil action a prerequisite to pursuit of compensation under the Vaccine Act. In addition, Congress amended paragraph (B) to "clarif[y] that a plaintiff in such an action whose action is still pending may not enter the compensation system." *Id.*

With the 1989 amendments, the exclusionary scope of paragraph (B) expanded to encompass all cases involving a co-pending civil action, not just those involving a pending civil action on October 1, 1988. In contrast, the scope of paragraph (A) remained the same, acting as a saving provision only with respect to those cases involving a pending civil action on October 1, 1988. Although the statutory framework is significantly changed, paragraph (A) is still a potential escape hatch for some who fall within the scope of paragraph (B). Those affected by paragraph (B), however, are no longer automatically eligible to take advantage of the saving provision of paragraph (A).

The success of Ms. Flowers's appeal depends upon whether the legislative history to the 1989 amendments mandates that amended paragraph (B) applies only in those cases involving a civil action pending on October 1, 1988 that have not been withdrawn before the filing of a Vaccine Act petition. While the legislative history shows such cases to have been a focus of express congressional concern, the amended statute is not accordingly limited. The amended statute excluded not only language concerning the time specified for the civil action, but also language concerning withdrawal of such action pursuant to paragraph (A). In view of the unrestricted language of amended paragraph (B), one could reasonably conclude that Congress ultimately thought it necessary to address co-pendency concerns beyond the single class of pre-enactment cases.

■ To be sure, our interpretation of the amendment to § 300aa–11(a)(5)(B) creates an anomaly in the structure of the statute. In the original 1986 version of the statute, § 300aa–11(a)(2) and (3) dealt with post-Act vaccination injuries, while § 300aa–11(a)(4), (5), and (6) all dealt with pre-Act injuries. Section 300aa–11(a)(4) applied to persons with pre-Act injuries whose civil actions terminated prior to the effective date of the Act; § 300aa–11(a)(5) applied to persons with pre-Act injuries whose civil actions were pending on the effective date of the Act; and § 300aa–11(a)(6) applied to persons with pre-Act injuries who filed a civil action after the effective date of the Act. The 1989 amendment, by expanding § 300aa–11(a)(5)(B) to apply to pre-Act as well as post-Act injuries, disturbed the logic of that structure. If there were other compelling evidence that Congress did not intend amended § 300aa–11(a)(5)(B) to apply to post-Act injuries, that structural anomaly might have provided persuasive support for an interpretation limiting the reach of § 300aa–11(a)(5)(B) in spite of the breadth of the statutory language. But we have found no such evidence, and absent compelling indications of congressional intent to the contrary, we cannot adopt Ms. Flowers's suggested construction of amended paragraph (B), which would essentially read back into the current version of the statute a part of the very language that Congress removed in 1989. We must construe § 300aa–11(a)(5)(B) according to its plain meaning to prohibit the filing of any Vaccine Act petition in which the petitioner has a co-pending civil action, irrespective of the date of that co-pendency. Ms. Flowers's petition on April 2, 1992 was thus a nullity.

**B**

On appeal, Ms. Flowers challenges the Court of Federal Claims' dismissal of her

petition for lack of jurisdiction, contending that § 300aa–11(a)(5) does not itself concern jurisdiction but rather only a petitioner's "capacity to sue." This court, however, has rejected similar arguments regarding § 300aa–11(a)(5). *See, e.g., Matos,* 35 F.3d at 1552 n. 8; *Carlson v. Secretary of Dep't of Health & Human Servs.,* 23 Cl.Ct. 788, 793 (1991), *aff'd mem.,* 968 F.2d 1227 (Fed.Cir. 1992). Because its jurisdiction under § 300aa–12(a) depends upon Ms. Flowers's entitlement to compensation under the Vaccine Act, the Court of Federal Claims correctly determined that it lacked jurisdiction to consider her petition.

Ms. Flowers also argues that the Court of Federal Claims erred by failing to follow *Garlington v. Secretary of Dep't of Health & Human Servs.,* No. 88–31V, 1989 WL 250129 (Cl.Ct.Sp.Mstr. Sept. 25, 1989) (unpublished). As the decision of a Special Master, however, *Garlington* is not controlling on either the Court of Federal Claims or this court. In any event, we agree with the Court of Federal Claims that *Garlington* involved facts substantially dissimilar to those in the present case, particularly with regard to dates of filing. *See Flowers,* No. 92–239V, slip op. at 7–8; *see also Allison v. Secretary of Dep't of Health & Human Servs.,* 23 Cl.Ct. 551, 555 (1991). We further note that our decisions in *Matos, Weddel,* and *Amendola* are of no avail to Ms. Flowers, as they are all pre-enactment cases involving civil actions pending on October 1, 1988.

## C

In its 1989 amendments, Congress intended "that plaintiffs in pending [civil] actions who wish to have such actions dismissed without prejudice so that they may enter the [federal] compensation system be allowed to do so without prejudice or other disincentives." H.R.Rep. No. 247, *supra,* at 511, *reprinted in* 1989 U.S.C.C.A.N. at 2237. Our holding today neither contravenes this intent, nor the general remedial intent of the Vaccine Act to "establish[ ] a new system for vaccine injury compensation which ... is fair, simple, and easy to administer." H.R.Rep. No. 908, 99th Cong., 2d Sess. 7 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6287,

6344, 6348. Our construction of the § 300aa–11(a)(5)(B) "gatekeeping" provision in no way undermines the ability of a petitioner, who inadvertently first filed a civil action, to dismiss that action without adverse consequence. Indeed, under 42 U.S.C. § 300aa–11(a)(2)(B) (1988), a Vaccine Act petitioner may retain the benefit of the filing date of her dismissed *civil* action for the purposes of the statutory limitations period, if she files the petition within one year of the date of the dismissal of that action. Had Ms. Flowers simply refiled her Vaccine Act petition within one year after the July 31, 1992 dismissal of her civil suit, she would have retained the benefit of her April 1, 1992 Ohio state court filing date and thus avoided any limitations period impediment to her claim. The Vaccine Act thus contains a favorable remedy for those who by inadvertence or accident deny themselves relief under § 300aa–11(a)(5)(B). As the government conceded at oral argument, had Ms. Flowers's refiled her Vaccine Act petition, that petition could not have been challenged under § 300aa–11(a)(5)(B).

## IV

For the reasons set forth, we agree with the holding of the Court of Federal Claims that Ms. Flowers's Vaccine Act petition is jurisdictionally barred.

## COSTS

Each party shall bear its own costs for this appeal.

*AFFIRMED.*